# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2018

No. 16-3458-cr

UNITED STATES OF AMERICA,
*Appellee,*

v.

ALLEN M. YOUNG,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of New York

SUBMITTED: AUGUST 17, 2018
DECIDED: DECEMBER 12, 2018

Before: CABRANES and LYNCH, *Circuit Judges*, and KORMAN, *District Judge.*[*]

---

The principal question presented is whether the District Court improperly delegated its judicial authority to the United States Probation Office when it ordered as a special condition of supervised release that the defendant submit to mental health and substance abuse testing and evaluation and follow "any treatment recommendations." The defendant further argues that his sentence is procedurally unreasonable because: (1) the District Court erroneously applied the official victim enhancement of United States Sentencing Guidelines section 3A1.2(c)(1); and (2) the District Court failed to grant a downward departure pursuant to United States Sentencing Guidelines section 5K2.23. We conclude that the District Court did not improperly delegate its judicial authority and that the sentence is not procedurally unreasonable and therefore **AFFIRM** the October 11, 2016 judgment of the United States District Court for the Western District of New York (Frank P. Geraci, Jr., *Judge*).

Judge Lynch concurs in part and dissents in part in a separate opinion.

---

[*] Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

Monica J. Richards, Assistant United States Attorney *for* James P. Kennedy, Jr., United States Attorney, Western District of New York, Buffalo, NY, *for Appellee*.

John A. Kuchera, Waco, TX, *for Defendant-Appellant*.

JOSÉ A. CABRANES, *Circuit Judge*:

The principal question presented is whether the District Court improperly delegated its judicial authority to the United States Probation Office when it ordered as a special condition of supervised release that the defendant submit to mental health and substance abuse testing and evaluation and follow "any treatment recommendations." The defendant Allen M. Young ("Young") further argues that his sentence is procedurally unreasonable because: (1) the District Court erroneously applied the official victim enhancement of United States Sentencing Guidelines section 3A1.2(c)(1); and (2) the District Court failed to grant a downward departure pursuant to United States Sentencing Guidelines section 5K2.23. We conclude that the District Court did not improperly delegate its judicial authority and that the sentence is not procedurally unreasonable and therefore **AFFIRM** the October 11, 2016 judgment of the United States District Court for the Western District of New York (Frank P. Geraci, Jr., *Judge*).

# I. BACKGROUND

Young appeals from an October 11, 2016 judgment of the District Court convicting him, following a guilty plea, of possession with intent to distribute methylone in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851. The District Court sentenced Young to 200 months' imprisonment to be followed by six years of supervised release, as well as a special assessment. On appeal, Young argues that the District Court erred by delegating to the Probation Office the decision of whether Young, upon release, would be required to participate in mental health or substance abuse treatment. He further argues that his sentence is procedurally unreasonable because: (1) the District Court erroneously applied the official victim enhancement of United States Sentencing Guidelines section 3A1.2(c)(1);[1] and (2) the District Court failed to grant a downward departure pursuant to United States Sentencing Guidelines section 5K2.23.[2]

---

[1] Section 3A1.2(c)(1) of the Sentencing Guidelines provides in relevant part:

> If, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom . . . increase by 6 levels.

[2] Section 5K2.23 of the Sentencing Guidelines provides in relevant part:

> A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 . . . would have provided an adjustment had that

4

We review the imposition of conditions of supervised release for "abuse of discretion."[3] We review legal issues arising from the imposition of such conditions de novo, and of course an error of law constitutes an abuse of discretion.[4] When a defendant fails to object to a condition, we typically review for plain error, but we may "relax the otherwise rigorous standards of plain error review" under certain circumstances, such as where a defendant lacked prior notice of the challenged condition.[5]

The procedural reasonableness of a sentence is likewise reviewed for "abuse of discretion."[6] A district court's interpretation of the Guidelines is reviewed de novo; its findings of fact are reviewed for clear error.[7]

---

completed term of imprisonment been undischarged at the time of sentencing for the instant offense.

[3] *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010). *See also In re City of New York*, 607 F.3d 923, 943 n.21 (2d Cir. 2010); *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or rendered a decision that cannot be located within the range of permissible decisions." (brackets, citations, and internal quotation marks omitted)).

[4] *Reeves*, 591 F.3d at 80.

[5] *United States v. Sofsky*, 287 F.3d 122, 125 (2d Cir. 2002).

[6] *United States v. Robinson*, 799 F.3d 196, 201 (2d Cir. 2015).

[7] *United States v. Watkins*, 667 F.3d 254, 261 (2d Cir. 2012).

## II. DISCUSSION

### A. Delegation to the Probation Office

#### 1. Law

United States probation officers serve as "officers of the court."[8] In their capacity as confidential advisers to the court, federal probation officers are regarded as "the court's eyes and ears, . . . neutral information gatherer[ers] with loyalties to no one but the court."[9] Indeed, because "the United States Probation Office is established pursuant to the direction of Congress as an arm of the United States District Court, it is reasonable to view the United States Probation Office itself as a legally constituted arm of the judicial branch."[10] Although the Probation Office is undeniably part of the federal judiciary, we have nonetheless stated that there are limits on a District Court's ability to delegate judicial authority to a probation officer.

In determining whether the District Court impermissibly delegated its authority to the United States Probation Office when it imposed on Young special mental health and substance abuse

---

[8] *United States v. Reyes*, 283 F.3d 446, 455 (2d Cir. 2002) (internal quotation marks and citation omitted).

[9] *Id.* (citation and internal quotation marks omitted).

[10] *Id.* (brackets, citations, and internal quotation marks omitted).

conditions, we are guided by this Court's precedents in *United States v. Peterson*[11] and *United States v. Matta*.[12]

In *Peterson*, we confronted the following special condition of probation: "[T]he defendant is to enroll, attend and participate in mental health intervention specifically designed for the treatment of sexual predators *as directed by the U.S. Probation Office*."[13] Our discussion focused principally on the ambiguity in the special condition's language. We noted that while the first clause ("[t]he defendant is to enroll, attend and participate") suggests that mental health treatment is mandatory, the second clause ("as directed by the U.S. Probation Office") could be understood to qualify the mandatory nature of that obligation.[14] We vacated and remanded this aspect of the sentence so that, upon resentencing, the district court could resolve this ambiguity and clarify whether it intended mandatory therapy. As we explained, "[i]f the district court intends that the therapy be mandatory but leaves a variety of details, including the selection of a therapy provider and schedule to the probation officer, such a condition of probation may be imposed."[15] If, however, "the court intends to leave the issue of the defendant's participation in therapy to the discretion of the probation officer, such a condition would

---

[11] 248 F.3d 79 (2d Cir. 2001).

[12] 777 F.3d 116 (2d Cir. 2015).

[13] *Peterson*, 248 F.3d at 84-85 (emphasis in original).

[14] *Id.* at 85.

[15] *Id.*

constitute an impermissible delegation of judicial authority and should not be included."[16] In sum, it was the district court's inclusion of the clause "as directed by the U.S. Probation Office" that rendered the otherwise mandatory special condition of counseling ambiguous and potentially unlawful.

In *Matta*, we addressed a special condition of supervised release which left "to the discretion of Probation" the decision of whether an inpatient or outpatient program was "most appropriate."[17] We remanded, holding that "a district court may not delegate to the Probation Department decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion."[18] In sum, because inpatient treatment "affects a significant liberty interest," it cannot be imposed by a probation officer in his or her supervisory capacity, but must instead be "imposed by the district court and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing."[19]

---

[16] *Id.*

[17] *Matta*, 777 F.3d at 122.

[18] *Id.*

[19] *Id.* at 123.

## 2. Analysis

On appeal, Young challenges the special conditions as recorded in the written judgment. The written judgment states the special conditions of supervised release as follows:

> The defendant shall submit to substance abuse testing, to include urinalysis and other testing. Details of such testing to be approved by the U.S. Probation Office. If substance abuse is indicated by testing, the defendant is to complete a drug/alcohol evaluation and enter into any treatment *as deemed necessary by the U.S. Probation Office* and/or the Court. The defendant is not to leave treatment *until discharge is agreed to by the U.S. Probation Office and/or the Court. . . .*
>
> The defendant is to submit to a mental health evaluation. If indicated by the evaluation, the defendant shall participate in mental health treatment, the details of such treatment *to be approved by the U.S. Probation Office.* The defendant is not to leave such treatment *until discharge is agreed to by the U.S. Probation Office and the treating agency. . . .*[20]

---

[20] Appellant App'x 32 (emphasis added).

Pointing to the text emphasized above, Young argues that the special conditions unlawfully delegate judicial authority to the Probation Office.

Importantly, the decretal text Young complains of appears only in the *written* judgment. By contrast, during the sentencing hearing, the District Court orally pronounced the special conditions as follows:

> You must submit to drug testing and evaluation and follow any treatment recommendations.
>
> You also must submit to mental health testing, evaluation, and any treatment recommendations.[21]

Insofar as there is a variance between the written and oral conditions, the District Court's oral pronouncement controls.[22] Later written modifications of the terms of supervised release omitted from the oral pronouncement are permitted where they add: (1) conditions of supervised release listed as "mandatory" or "standard" in subsections 5D1.3(a) or (c) of the United States Sentencing Guidelines; (2) conditions "recommended" by subsection 5D1.3(d) of the Guidelines;[23] and (3) "basic administrative requirements that are

---

[21] *Id.* at 65.

[22] *United States v. Rosario*, 386 F.3d 166, 168 (2d Cir. 2004).

[23] Subsection 5D1.3(d) of the Guidelines lists as "recommended" certain "special" conditions, including the following:

necessary to supervised release."[24]

### a. Substance Abuse Condition

The first written condition—the "Substance Abuse Condition"—appears to suffer from precisely the same defect as the condition found objectionable in *Peterson*. Whereas the first clause ("defendant is to complete a drug/alcohol evaluation and enter into any treatment") suggests that substance abuse treatment is mandatory, the second clause ("as deemed necessary by the U.S. Probation Office") can be understood to delegate authority to the Probation Office. As in *Peterson*, it is unclear from this written condition whether the District Court is mandating treatment if

(4) <u>Substance Abuse</u>

If the court has reason to believe that the defendant is an abuser of narcotics, other controlled substances or alcohol – (A) a condition requiring the defendant to participate in a program approved by the United States Probation Office for substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol; and (B) a condition specifying that the defendant shall not use or possess alcohol.

(5) <u>Mental Health Program Participation</u>

If the court has reason to believe that the defendant is in need of psychological or psychiatric treatment – a condition requiring that the defendant participate in a mental health program approved by the United States Probation Office.

[24] *Rosario*, 386 F.3d at 169 (internal citations and quotation marks omitted).

indicated by evaluation, or leaving the ultimate decision of whether to require treatment to the Probation Office.

By contrast, the District Court's oral pronouncement of the Substance Abuse Condition—which controls—unambiguously requires Young to enroll in substance abuse treatment if indicated by testing. Unlike *Peterson*, the oral Substance Abuse Condition does not contain a subordinate clause that renders ambiguous an otherwise mandatory obligation. Rather, insofar as evaluation indicates a need for treatment, the treatment is *mandatory* pursuant to the oral pronouncement; it does not constitute an improper delegation of judicial authority. The remainder of the written Substance Abuse Condition is fully consistent with both the oral instructions of the District Court as a "basic administrative requirement."[25] It stands and properly authorizes the Probation Office to supervise and oversee that treatment.

In light of *Matta*, however, we construe this authorization to exclude the imposition of inpatient treatment.[26] Under *Matta*, the

---

[25] *Rosario*, 386 F.3d at 169.

[26] We recognize that certain outpatient treatment programs may be sufficiently restrictive so as to invoke the "significant liberty interest[s]" that motivated this Court's holding in *Matta*. *See Matta* 777 F.3d at 122-23. We are assured, however, by 18 U.S.C. § 3583(e)(2) and Rule 32.1(c) of the Federal Rules of Criminal Procedure, that "in cases of neglect, overwork, or simply unreasonableness on the part of the probation officer, the probationer should have recourse to the sentencing court when a condition needs clarification or modification." Fed. R. Crim. P. 32.1 advisory committee's notes (1979). *See United States v. Padilla*, 415 F.3d 211, 223 (1st Cir. 2005) ("We believe that this remedial

12

imposition of inpatient treatment must be "supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing."[27] The Court made no such findings here. We also construe this authorization to apply to the entirety of Young's term of supervised release.

### b. Mental Health Condition

Unlike the written Substance Abuse Condition, the written "Mental Health Condition" constitutes an unambiguously lawful, and indeed advisable, means of delegating supervisory authority to the Probation Office. The written Mental Health Condition—"If indicated by the evaluation, the defendant shall participate in mental health treatment . . . ."[28]—clearly and unambiguously orders Young's participation in mental health treatment. It leaves to the Probation Office's discretion only the approval of "details of such treatment,"[29] which is clearly permissible under *Peterson*.[30]

---

regime provides adequate means for redress should the probation officer attempt to ride roughshod.").

[27] *Matta*, 777 F.3d at 123 (internal quotation marks and citation omitted).

[28] Appellant App'x 32.

[29] *Id.*

[30] *Peterson*, 248 F.3d at 85 ("If the district court intends that the therapy be mandatory but leaves a variety of details, including the selection of a therapy provider and schedule to the probation officer, such a condition of probation may be imposed.").

13

The oral "Mental Health Condition" is no different; it similarly mandates treatment for Young if treatment is indicated by a mental health evaluation. As with the Substance Abuse Condition, we construe the Mental Health Condition to exclude inpatient treatment, since such "restrictive" programs must be supported by particularized findings. [31] We also construe the District Court's authorization to apply to the entirety of Young's term of supervised release.[32]

## B. Procedural Reasonableness of Young's Sentence
### 1. Official Victim Enhancement

Young argues that his sentence is procedurally unreasonable because the District Court erroneously applied the official victim

---

[31] *Matta*, 777 F.3d at 123.

[32] The dissent argues that our construction of the authority conferred on the probation officer by the oral conditions of supervised release is broader than our precedents permit. Nevertheless, it concedes that such a delegation would "certainly be defensible," given the "cumbersome" alternative of "requir[ing] the Probation Office to return to the court . . . to modify the conditions of release to require treatment," if indicated by testing. *See* Dissent at 24. While the dissent would have probation officers seek further judicial approval for post-sentence treatment, our holding avoids this potentially unnecessary intervention while permitting defendants to seek judicial review of any overreach. *See supra* note 26. Here, in imposing sentence, the District Court—not the probation officer—mandated that the defendant undergo evaluation and, if necessary, treatment. And it is the District Court that has the final word upon review. *See* 18 U.S.C. § 3583(e)(2) ("The court may . . . modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release . . . ."). Under either our approach or that of the dissent, "[t]he power to impose special conditions of supervised release" remains "vested exclusively in the district court." *Matta*, 777 F.3d at 122.

14

enhancement of United States Sentencing Guidelines section 3A1.2(c)(1). Young appears to argue that he did not "assault" law enforcement officers within the meaning of section 3A1.2(c)(1) because he did not intend to hit the officers with his car or to cause them fear and did not realize that the individuals toward whom he drove his vehicle were police officers.

The official victim enhancement of Guidelines section 3A1.2(c)(1) provides as follows:

> If, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, *assaulted* such officer during the course of the offense or immediate flight therefrom . . . increase by 6 levels.[33]

We have already held, in a somewhat different context, that the word "assault" refers to the common-law offense of assault.[34] "[C]ommon-law assault consisted of either attempted battery or the deliberate infliction upon another of a reasonable fear of physical injury . . . ."[35]

In applying this Guidelines provision during the sentencing hearing, the District Court stated as follows:

---

[33] U.S. SENTENCING GUIDELINES MANUAL § 3A1.2(c)(1) (emphasis added).

[34] *See United States v. Delis*, 558 F.3d 177, 180 (2d Cir. 2009).

[35] *Id.*

Sentencing Guideline 3A1.2(c) indicates that there should be a six level increase to the offense level if the defendant acted in a manner creating a substantial risk of serious bodily injury knowing or having reasonable cause to believe that a person was a law enforcement officer during the course of the offense or the immediate flight therefrom.

Again, based upon the evidence that the Court found credible at the hearing, the Court finds that there was more than sufficient evidence, clearly more than a preponderance of the evidence that the defendant created a substantial risk of serious bodily injury to the officers who were attempting to execute the search warrant on this occasion on him and on his motor vehicle on December 13th, 2012.

That he created a substantial risk of serious injury to the officers when he initially reversed his vehicle at a high speed while the officers were beside the vehicle, more importantly, when he drove his vehicle directly at one of the officers.

The Court finds that the defendant's argument that he did not know that the individuals involved were police officers . . . is not credible or logical based upon the evidence in this case, including evidence that the two officers were wearing badges around

their neck as they approached him and yelled multiple times in loud voices please stop.[36]

Therefore, the Court finds the evidence is really quite overwhelming regarding the defendant's action in creating a substantial risk of serious bodily injury to these officers and, therefore, the six level increase pursuant to Guideline Section 3A1.2(c) shall be applied.[37]

We conclude that this record is sufficient to sustain the District Court's application of the official victim enhancement. The record supports the District Court's finding by a preponderance of the evidence that Young knew or had reasonable cause to know that the individuals involved were law enforcement officials. Moreover, the District Court's findings adequately support a conclusion that Young committed an assault by driving his car directly at one of the officers.[38]

---

[36] Elsewhere in the record, including the evidentiary hearing upon which the District Court's conclusion was based, it appears that the officers stated "Police. Stop." Gov't App'x 69 (hearing transcript); 121 (decision and order of the District Court).

[37] Gov't App'x 125-126. On the day following the sentencing hearing, the District Court entered a "decision and order" repeating substantially the same reasoning and conclusion regarding the application of Section 3A1.2(c). *See* Gov't App'x 117-121; Appellant App'x 19 (docket sheet entry).

[38] *United States v. Washington*, 73 F. App'x 501, 504 (2d Cir. 2003) (citing analogous cases).

Accordingly, the District Court did not err by applying section 3A1.2(c) to Young.

## 2. Section 5K2.23 Downward Departure

Young also argues that his sentence is procedurally unreasonable because the District Court failed to grant a downward departure to account for the time he spent in presentence state custody before his federal conviction. Young's main theory in support of this argument is that the District Court improperly failed to apply United States Guidelines section 5K2.23.

Because Young failed to raise this objection before the District Court, we review the procedural reasonableness of his sentence for plain error.[39]

Guidelines section 5K2.23 ("Discharged Terms of Imprisonment (Policy Statement)") provides in relevant part:

---

[39] *See United States v. Parse*, 789 F.3d 83, 119-20 (2d Cir. 2015) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)) (plain error standard). As a general rule, "a refusal to downwardly depart is . . . not appealable." *United States v. Stinson*, 465 F.3d 113, 114 (2d Cir. 2006) (internal quotations and citation omitted). Appellate review is available, however, "when a sentencing court misapprehended the scope of its authority to depart or the sentence was otherwise illegal." *United States v. Valdez*, 426 F.3d 178, 184 (2d Cir. 2005) (citations omitted). Defendant argues that the District Court was unaware of its authority to depart, and points to the Presentence Report, which states that there are "no circumstances concerning the offense or the offender that would warrant a departure from the prescribed guidelines." PSR ¶ 111. We thus review for plain error.

> A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 . . . would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense.[40]

We conclude that Young's sentence is not procedurally unreasonable, because Young did not qualify for a downward departure under section 5K2.23. Section 5K2.23 incorporates the terms of Guidelines section 5G1.3(b).[41] Guidelines section 5G1.3(b), for its part, can apply only if "a term of imprisonment resulted from another

---

[40] U.S. SENTENCING GUIDELINES MANUAL § 5K2.23.

[41] Section 5G1.3(b) of the Guidelines provides as follows:

> If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:

> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

19

offense that is relevant conduct to the instant offense of conviction."[42] Young had been held in custody on related New York state charges, but he himself concedes that he was never sentenced to prison for the conduct charged in New York state court.[43] Since Young never received a "term of imprisonment," he has not satisfied the second condition of Guidelines section 5K2.23; therefore, section 5K2.23 cannot have applied to Young's case. Accordingly, the District Court's failure to consider section 5K2.23 when determining Young's sentence does not qualify as error, much less plain error.[44]

## III. CONCLUSION

In summary, we hold that the District Court did not improperly delegate to the United States Probation Office the decision of whether Young would be required to undergo treatment. A district court may mandate, in advance of testing and evaluation, any necessary or recommended outpatient treatment, and may authorize the Probation

---

[42] U.S. SENTENCING GUIDELINES MANUAL § 5G1.3(b).

[43] *See* Appellant Br. 27 ("Subsection (b) does not apply because Young was not actually assessed a term of imprisonment on his state charges.").

[44] Young also appears to argue that his presentence investigation report should have included information about the time he had spent in state custody and that the District Court should have credited him for that time. The record indicates that the District Court failed to take into account the five and a half months Young had already spent in state custody. Nevertheless, the U.S. Attorney argues that the Bureau of Prisons gave Young credit for time served. While Young disputes the accuracy of the calculation, we agree with the U.S. Attorney that the defendant has available to him administrative remedies and, if necessary, a petition pursuant to 28 U.S.C. § 2241 to correct any error.

Office to approve and oversee the details of such treatment. This authorization lasts for the entirety of the defendant's term of supervised release. To mandate inpatient treatment, a district court must make particularized findings that such a course of treatment does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing. We further hold that Young's sentence is not procedurally unreasonable.

We therefore **AFFIRM** the District Court's judgment of October 11, 2016.

GERARD E. LYNCH, *Circuit Judge*, concurring in part and dissenting in part:

I fully concur in the Court's opinion insofar as it holds that Young's sentence was procedurally reasonable. I respectfully dissent from that portion of the opinion that upholds the challenged conditions of supervised release, because I believe that the conditions, as they appear both in the written judgment and in the oral pronouncement of sentence, are inconsistent with *United States v. Peterson*, 248 F.3d 79 (2d Cir. 2001), and *United States v. Matta*, 777 F.3d 116 (2d Cir. 2015), in which we found that similar conditions improperly delegated the Court's authority to the Probation Office. I do not disagree with the Court's explanation of the governing principle. My disagreement is with its characterization of the conditions imposed in this case.

The Court construes the oral Substance Abuse Condition as "mandatory" because it "does not contain a subordinate clause that renders ambiguous an otherwise mandatory obligation." Maj. Op. 12. The condition is indeed "mandatory" in that it uses mandatory language to the defendant ("You must . . .."). But with respect to treatment, what Young is mandated to do is whatever the Probation Officer (or perhaps someone other than the Probation Officer) decides should be done: "You *must* submit to drug testing and evaluation and *follow any treatment recommendations*." Appellant App'x 65 (emphasis added). Unlike the Court in *Matta*, the district court did not decide that drug treatment of any kind was necessary, nor did it require that Young participate in such treatment. The obligation is conditional:

Young must participate in drug treatment only if enrollment in a drug treatment program is "recommend[ed]" by whoever performs the "testing and evaluation." *Id.* The condition imposed does not even require Young to obtain treatment if he fails a urine test for an illicit substance; if it did that, it could be argued that the judge had imposed drug treatment whenever a putatively objective test result showed drug use, leaving the Probation Officer in that case with only the ministerial task of arranging for (non-residential) drug treatment. Instead, participation in drug treatment is required only upon a "recommendation," based on a subjective "evaluation" of whether a positive test result — presumably along with other evidence relevant to whether the failure was a one-time lapse or indicative of a continuing problem requiring treatment — indicates to the evaluator (perhaps the Probation Officer, perhaps some independent medical or drug treatment agency subcontracted to perform the "evaluation") that such treatment is indicated.[1]

---

[1] Reference to the written judgment confirms this reading of the oral condition. The written condition, like the oral condition, unambiguously and without qualification requires drug *testing*. But it makes absolutely clear that the district court requires drug *treatment* only conditionally, and only at the discretion of the Probation Office: "*If* substance abuse is indicated by testing, the defendant is to *complete a drug/alcohol evaluation* [not, "to enter a treatment program"] and enter into *any treatment as deemed necessary by the U.S. Probation Office.*" Appellant App'x 32 (emphasis added). The Court is correct, of course, that the oral pronouncement of sentence controls over any inconsistent provision of the written judgment. But here, the written judgment seems to me entirely consistent with my reading of the oral condition (and indeed, I do not read the Court's opinion as disagreeing with my reading of what the oral condition actually requires; it simply characterizes the condition, so interpreted, as "mandatory").

The Mental Health Condition is similarly structured. It too (in its oral version) requires Young to "submit to mental health testing, evaluation, and any treatment recommendations." *Id.* This condition thus plainly requires mental health treatment (as construed by the majority, limited to outpatient treatment) *only if such treatment is recommended by whoever performs the evaluation.*[2] The Mental Health Condition is, if anything, even clearer than the Drug Treatment Condition in delegating the determination of whether such treatment is appropriate not merely to the Probation Officer (who presumably is not a trained or licensed mental health practitioner), but to a psychiatrist, psychologist, or other mental health professional who would be tasked with evaluating the defendant and determining whether he requires treatment. I do not see how this can be construed as a determination by the district court that Young is *mandated* to submit to mental health treatment as a condition of his release. It requires such treatment only at the discretion of someone other than the judge.

I do not suggest that the ruling of the Court impinges in some deeply unacceptable way on the responsibilities of the courts or the rights of defendants. Young is sentenced to 200 months of imprisonment. To require a district court to decide *today* whether he will require drug or mental health treatment more than 15 years into the future would make little sense. And it is arguably cumbersome (but perhaps not too much so, given the significance of the potential

---

[2] With respect to this condition, too, the written version is entirely consistent in providing treatment only "[i]f indicated by the evaluation." *Id.*

24

imposition on the defendant) to require the Probation Office to return to the court if it believes, on the basis of mandated drug or mental health testing after his release, to ask the district court to modify the conditions of release to require treatment. So a system that would permit broader delegation to the Probation Office than is permitted by our precedents would certainly be defensible. For good or ill, however, our precedents do not permit such a practice.

Because the conditions imposed here can *only* be read as subjecting the defendant to drug and mental health treatment *if* the Probation Office (or some other professional) determines that such treatment is necessary, I respectfully dissent.